IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division


ATHENA E. NASIS-PARSONS,

        Plaintff,

v.                                                        Case No. 4:05cv36

MICHAEL W. WYNNE,
SECRETARY OF THE AIR FORCE,

        Defendant.


## OPINION & ORDER

This matter is before the Court on Defendant's Motion to Dismiss and for Summary

Judgment ("Defendant's Motion").  (Doc. 7.)  The Court held a hearing on Friday, May 19, 2006,

and took Defendant's Motion under advisement.  The same day, Plaintiff filed a "Motion to

Defer Decision on Summary Judgment until Issuance of Pending U.S. Supreme Court Decision

and for Expedited Decision" ("Motion to Defer").  (Doc. 12.)  For the following reasons,

Plaintiff's Motion to Defer is **DENIED** and Defendant's Motion is **GRANTED**.  Final judgment

is hereby entered for Defendant.

### I.  Motion to Defer

Plaintiff moves the Court to defer ruling on Defendant's Motion, pending a decision by

the Supreme Court of the United States in Burlington Northern & Santa Fe Railway Co. v.

White, 364 F.3d 789 (6th Cir. 2004), cert. granted, 126 S.Ct. 797 (Dec. 5, 2005) (No. 05-259).

The Supreme Court heard oral argument in Burlington Northern on April 17, 2006.  Before the

Supreme Court is a question regarding the definition of the "adverse employment action" element of a prima facie Title VII retaliation case.[1]

Having considered Plaintiff's and Defendant's submissions on Platiniff's Motion to Defer, Plaintiff's Motion to Defer is hereby **DENIED**.  This Court is unwilling to speculate as to the relevance of the outcome of the Supreme Court's consideration of Burlington Northern to the present matter, when the law binding on this Court is clear as to the definition of "adverse employment action."

## II.  Defendant's Motion

Plaintiff alleges that the Secretary of the Air Force, in his official capacity, subjected her to several adverse employment actions in retaliation[2] for her engaging in prior protected activity, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3(a).[3]  (Doc. 1 ¶ 1.)

---

[1] The writ of certiorari states the question as:

"Whether an employer may be held liable for retaliatory discrimination under Title VII for any 'materially adverse change in the terms of employment' (including a temporary suspension rescinded by the employer with full back pay or an inconvenient reassignment, as the court below held); for any adverse treatment that was 'reasonably likely to deter' the plaintiff from engaging in protected activity (as the Ninth Circuit holds); or only for an 'ultimate employment decision' (as two other courts of appeals hold)."  126 S.Ct. 797, 798 (citing 2005 WL 2055901, at *i).

[2] Plaintiff's complaint included a separate hostile work environment claim, (Doc. 1 ¶¶ 10, 12, 15-20, 28-30), which Plaintiff expressly dropped in her Opposition to Defendant's Motion, (Doc. 10 p.2).

[3] While there is some uncertainty whether the 1964 Civil Rights Act gives federal employees the same cause of action for retaliation as private employees have, the Court will presume that they do have such a right for the purposes of Defendant's Motion.  Defendant has not argued otherwise, see Laber v. Harvey, 438 F.3d 404, 432 n.30 (4th Cir. 2006), and the Code of Federal Regulations prohibits such retaliation. 29 C.F.R. § 1614.101(b).

2

Defendant has moved to dismiss Plaintiff's claims arising from a May 8, 2002, performance evaluation and for summary judgment as to all of Plaintiff's claims.  (Doc. 7.)

### A.  Factual Background

The following background facts are not in dispute: Air Combat Command at Langley Air Force Base, Virginia, ("ACC HQ") is one of nine major Air Force Commands.  (Doc. 8 ¶ 1.) The Directorate of Personnel ("DP") at ACC HQ is responsible for civilian and military personnel issues.  Id. at ¶ 2.  Within the DP, the Personnel Programs Division ("DPP") has oversight of programs and services provided to military members and their families.  Id.  One of five branches within the DPP is the Education and Training Branch ("Education Branch"), which provides academic services to active duty personnel at Air Force installations across the United States.  Id.

At all times relevant to this complaint, Plaintiff was employed as an Education Services Specialist, GS-1740-13, in the Education Branch.  Id. at ¶ 3.  Plaintiff was the second-ranking civilian in the Education Branch.  Id.  Her first-line supervisor, Alice Jessup, was the highest-ranking civilian in the Education Branch and was Branch Chief.  Id. at ¶ 4.  Plaintiff's second-line supervisor was Col. R.J. Rouse, Chief of the DPP.  Id. at ¶ 5.

Plaintiff contacted an EEO counselor on June 25, 2002, to report alleged discrimination. (Doc. 8, DEX 9.)  On November 17, 2003, the Report of Investigation stated that Plaintiff alleged the creation of a hostile work environment in retaliation for a prior, 1996-1998, EEO complaint; this retaliation allegedly took the form of, inter alia, an unfair performance evaluation on May 8, 2002; removing Plaintiff from a "maxiflex" alternative work schedule ("AWS"); and denying her attempt to return to "maxiflex."  Id. at DEX 10.  On December 8, 2004, the Equal Employment

3

Opportunity Commission ("EEOC") entered judgment for the Air Force. Id. at DEX 11. The Air Force adopted the EEOC's decision on the merits via Final Order on January 13, 2005, id. at DEX 12, and Plaintiff filed suit in this Court on April 11, 2005, (Doc. 1).

## B. Legal Standards

### 1. Summary Judgment

Entry of summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(c). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

"Genuine" disputes are those that show a true conflict between established facts. Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). Genuine disputes are not created through "[a] mere scintilla of evidence," Nbuyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995), "[m]ere unsupported speculation," Ennis v. Nat'l Ass'n of Bus. & Ed. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1996), "mere belief or conjecture," Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995), or the "mere . . . building of one inference upon another," Beale v. Hardy, 769 F.2d 213, 213 (4th Cir. 1985).

When a motion for summary judgment is supported with affidavits made on personal

4

knowledge, setting forth such facts as would be admissible in evidence, and which show that the affiant is competent to testify as to the matters stated therein, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading." Rule 56(e). Under such circumstances, the non-moving party's response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Id. "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id. If the adverse party cannot respond, it must state why in order to allow the Court to decide whether to deny the motion for summary judgment or provide the non-movant more time to obtain affidavits, have discovery, or take depositions. Fed. R. Civ. P. 56(f).

"Material" facts bear directly on "an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. at 322. In determining the "materiality" of facts, the Court is to consider "the actual quantum and quality of proof necessary" to support the non-moving party's claim, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986), and those facts that "address . . . the adequacy of the showing made by [the non-moving party and] . . . whether such showing, if reduced to admissible evidence, would be sufficient to carry the non-moving party's burden of proof at trial." Celotex Corp. at 327.

## 2. Title VII Retaliation Claims

Section 704(a) of Title VII of the 1964 Civil Rights Act provides that:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

42 U.S.C. § 2000e-3(a). To make out a prima facie case of Title VII retaliation, Plaintiff must

5

prove that (1) Plaintiff engaged in prior activity protected by Title VII; (2) Plaintiff suffered an adverse employment action; and (3) there is a causal connection between the prior protected activity and the adverse employment action.  Baquir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006).

An "adverse employment action" is employer action that adversely affects the "terms, conditions, or benefits" of employment.  Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001).  The consequences of the allegedly adverse action must be tangible and have a significant detrimental effect.  Boone v. Goldin, 178 F.3d 253, 255-56 (4th Cir. 1999).  "[O]ffice unpleasantries that [are] at most the result of 'predictable tension' in the workplace following the lodging of discrimination and retaliation charges" are not adverse employment actions.  Von Gunten, 243 F.3d at 870.

A prima facie "causal connection" is either direct evidence that the adverse employment action would not have happened, but for the prior protected activity, Ross v. Communications Satellite Corp., 759 F.2d 355, 365-66 (4th Cir.1985),[4] or circumstantial evidence showing "that Defendant had knowledge of the protected activity and that the temporal proximity between the employer's knowledge of protected activity and the [adverse action] was 'very close,'" Bullard v. Panasonic Corp. of America, 418 F. Supp. 2d 802, 814 (E.D. Va. 2006) (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001)).

As temporal proximity fades, the inference of causal connection weakens.  See Dowe v.

_____

[4] Abrogated on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) (plurality) (regarding the appropriate burden-shifting scheme for mixed-motive cases); see Wrightson v. Pizza Hut of America, Inc., 99 F.3d 138, 142 n.2 (4th Cir. 1996); Lettieri v. Equant, Inc., 367 F. Supp. 2d 958, 965 (E.D. Va. 2005).

Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse . . . negates any inference that a causal connection exists.").  There is no bright-line rule; however, a three- to four-month delay has been held to be too long to establish a causal connection, Breeden at 273-74.  A delay of two months and two weeks may suffice but is still "sufficiently long so as to weaken significantly the inference of causation between the two events," King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003).[5]

### 3.  Burdens of Proof and Production

The ultimate burden of "persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citation omitted).  The burden of production in a Title VII retaliation case shifts according to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1974). See, e.g., Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004).  First, Plaintiff bears the burden of establishing, by a preponderance, a prima facie case of discrimination. Price at 212.

After Plaintiff establishes her prima facie case, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory, reason for its action. Id.  Defendant is not required to prove that the proffered reason was the actual reason for the allegedly adverse employment action; instead, the reason must only be "legally sufficient to justify a judgment" in

---

[5] An exception may exist in the failure-to-hire context that would allow a inference of causation over a longer period of time, as the employer's opportunities for retaliation would be limited if the prior protected activity was also a failure-to-hire complaint. See Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004) ("We assume, without deciding, that in the failure-to-hire context, the employer's knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case.")

favor of Defendant.  Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004); (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981)).[6]

If the Defendant does articulate a legitimate, nondiscriminatory, reason, then the prima facie case disappears and the burden of production shifts back to the Plaintiff to show that the given reason is pretextual.  See Reeves at 142-43.  Pretext is not established by disbelief, id. at 146-47; rather, the Plaintiff must show that the articulated reason is "unworthy of credence or . . . offer[] other forms of circumstantial evidence sufficiently probative of retaliation."  Price v. Thompson at 212 (citing Mereish at 336).

### C.  Prior Protected Activities

Plaintiff alleges that she engaged in two prior protected activities relevant to this complaint.  First, that she brought a Title VII claim against the Secretary of the Air Force in 1996 that was settled in 1998, (Doc. 1 ¶ 9); second, that in 2001 and 2002 she complained to her first-line supervisor about (a) harassment by the same employee who was the subject of her 1996 complaint; and (b) that the same employee was denying her information necessary to the performance of her job, (Doc. 10 ¶¶ 12, 19).

Defendant's Memorandum in Support of Defendant's Motion "concedes plaintiff engaged in prior protected EEO activity" for the purposes of the Motion.  (Doc. 8 p.11.)  Defendant's concession does not relieve Plaintiff of her burden of showing adverse subsequent employment actions, nor of her burden of showing a causal connection between the employment actions and a

---

[6]While Mereish involved a claim of retaliation under the Age Discrimination in Employment Act ("ADEA"), retaliation claims under both the ADEA and Title VII are considered under the McDonnell Douglas framework.  Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006).  See also Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004) (quoting Mereish in the context of a Title VII retaliation claim).

prior protected activity.

### D.  Alleged Acts of Retaliation

Plaintiff alleges five adverse employment actions: (1) giving Plaintiff poor marks on a

May 8, 2002, performance evaluation, which allegedly resulted in the denial of a monetary bonus

(Doc. 1 ¶¶ 12-14); (2) removing Plaintiff from a "maxiflex" alternative work schedule ("AWS")

and refusing to return Plaintiff to the same maxiflex schedule, which resulted in Plaintiff having

to use more of her own sick time, see id. at ¶¶ 21-13; (Doc. 10 ¶ 26); (3) preventing Plaintiff

from using extra sick leave that was donated to plaintiff from other employees, which denied

Plaintiff extra sick leave to which she had a right, id. at ¶¶  27-29; (4) denying Plaintiff

compensatory time for temporary duty assignments, id. at ¶¶ 27; and (5) no longer relying on

Plaintiff to serve as acting branch chief, id. at ¶¶ 30-31.

### 1.  May 8, 2002, Performance Evaluation

#### a.  Facts

Plaintiff learned of her 2001-2002 performance evaluation on May 8, 2002.  (Doc. 8 ¶ 10;

Doc. 10 p.11-12.)  Plaintiff met all of the "critical elements" of her position's requirements.[7]

(Doc. 8, DEX 1, Attachment B.)  Plaintiff received a performance award of sixteen hours' time

off.  Id.  Plaintiff does not dispute that Air Force rules state that performance awards, both

monetary and otherwise, are awarded at the discretion of her supervisors.  (Doc. 10 p.13; Doc. 8,

DEX 1, Rouse Decl. ¶ 6 & Attachment C, parts 1.2.1 & 2.7.4.)

Plaintiff was also evaluated on nine "Appraisal Factors" relating to the manner of

---

[7] The critical elements evaluation requires the evaluator to mark either "meets" or "does
not meet" the elements.  (Doc. 8, DEX 1, Attachment B.)

Plaintiff's performance.  (Doc. 8, DEX 1, Attachment B.)  For each factor, Plaintiff was rated on

a scale of "1" ("very poor") to "9" ("outstanding").  Id.  Plaintiff received an "outstanding" rating

for "problem solving."  Id.  Plaintiff received an "8" ("far above fully successful") in seven

categories: "work effort," "adaptability to work," "communication," "work perspective," "self-

sufficiency," "skill in work," and "work management."  Id.  Plaintiff received a "6" ("slightly

above fully successful") in "working relationships."  Id.  Plaintiff did not receive a monetary

bonus.  (Doc. 11 p.5.)  Plaintiff alleges that she did not receive a monetary bonus due to these

scores (Doc. 10 p.13) and that in her career she had always received a monetary bonus when

monetary bonuses were available, id. at ¶ 4, p.3 n.1.

### b.  Adverse Employment Action

_____The Court hereby FINDS that the May 8, 2002, performance evaluation was not an

adverse employment action.  Plaintiff bears the burden to show that the evaluation had a

"significant detrimental effect" on the terms, conditions, or benefits of her employment.  Von

Gunten at 865; Boone at 255-56.  Plaintiff alleges that the performance evaluation caused her not

to receive a financial bonus.

Plaintiff's allegedly poor performance evaluation is not itself an adverse employment

action.  "A downgrade of a performance evaluation could effect a term, condition, or benefit of

employment if it has a tangible effect on the terms or conditions of employment."  James v.

Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004) (citing Von Gunten, 243 F.3d at

867; Spears v. Missouri Dep't of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000)).  A

loss of prestige or status that results from a disappointing performance evaluation is not

actionable.  James at 377 (citing Cossette v. Minnesota Power & Light, 188 F.3d 964, 972 (8th

Cir. 1999)).

Plaintiff alleges that the performance evaluation caused her not to receive a discretionary financial bonus. However, the loss of a discretionary or gratuitous bonus does not have a tangible effect on the terms or conditions of employment when the employee is not automatically entitled to her bonus. See Rabinovitz v. Pena, 89 F.3d 482, 487 (7th Cir. 1996). It is undisputed that Air Force regulations grant supervisors discretion over whether to grant bonuses and whether such bonuses will be financial, extra time off, or a combination of the two. (Doc. 8, DEX 1, Attachment C, parts 1.2.1 & 2.7.4.)

In the related contexts of retaliation claims under the Employee Retirement Income Security Act of 1974 ("ERISA") § 510 and the National Labor Relations Act ("NLRA") § 8(a)(3), the Fourth Circuit, en banc, held that "an employer's revocation of a gratuitous benefit does not constitute unlawful discrimination." Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1483-84 (4th Cir. 1996) (en banc) (citing NLRB v. Electro Vector, 539 F.2d 35, 37 (9th Cir. 1976) ("[A] bonus which is considered a 'gift' can be withheld by the employer at will . . . ."); NLRB v. Wonder State Mfg. Co., 344 F.2d 210, 212 (8th Cir. 1965) ("The rule is that gifts per se . . . are not terms and conditions of employment, and an employer can make or decline to make such payments as he pleases . . . .")). ERISA § 510 bans retaliation for exercising ERISA rights; NLRA § 8(a)(3) forbids retaliation for membership in a labor organization. Stiltner, 74 F.3d at 1483. The court determined that ERISA § 510 was modeled after NLRA § 8(a)(3) and applied these NLRA cases to the ERISA case before it. Id.; accord Varghese v. Honeywell Int'l Inc., 424 F.3d 411 (4th Cir. 2005) (recognizing state supreme court holding that a discretionary bonus was not a "wage" for the purposes of Maryland wage, payment, and collection law).

11

The Court also is mindful of the public policy of encouraging the use and awarding of discretionary benefits.  See Stiltner at 1484.  Under Plaintiff's interpretation of "adverse employment action," an employee's awards for past performance would become entitlements, the denial of which would become actionable, should that employee later engage in activity protected by Title VII.  Merely alleging harassment to a supervisor, even if completely unfounded, could lock-in an employee's most recent "discretionary" award for the remainder of the employee's career.  Faced with this possibility, "employers may be inclined to turn a cold shoulder to the special needs of particular employees," id. (citations omitted), or be persuaded to turn a cold shoulder to employees whose hard work and production warrant special recognition during a particular time frame.

Nor does the fact that Plaintiff has previously received financial bonuses make the bonus in question non-discretionary.  Bonuses are not discretionary if they are mandatory or if they are part of an employee's employment package.  Schamann v. O'Keefe, 314 F. Supp. 2d 515, 531 (D. Md. 2004) (citing Rabinovitz, 89 F.3d at 488-89; Harrington v. Harris, 118 F.3d 359, 366 (5th Cir. 1997) (disputes over the quantum of pay increases are not adverse employment actions under First Amendment retaliation claims)).  Neither the regulations, (Doc. 8, DEX 1, Attachment C, parts 1.2.1 & 2.7.4), nor the practice under Col. Rouse and Ms. Jessup, id. DEX 1 (Rouse Decl. ¶ 6), indicate that the award of performance bonuses were mandatory or that the award of bonuses was part of each employee's compensation package.

Additionally, Plaintiff fails to allege that the receipt of additional days off, rather than a monetary bonus, is significantly detrimental; she simply states that her evaluation caused her to receive additional time off instead of money.  (Doc. 10 ¶ 24.)  Plaintiff does not allege that days

12

off are of no value to her; nor does the Air Force's performance award policy distinguish the nature of the awards available by employee performance, Doc. 8, DEX 1, Rouse Decl. ¶ 6 & Attachment C, parts 1.2.1 & 2.7.4: for example, monetary bonuses are not limited to employees with particular minimum evaluation scores.

Plaintiff does not challenge the accuracy of the terms of the policy as provided in Defendant's materials.  (Doc. 10.)  Faced with a Plaintiff who received a discretionary bonus, although not the type of bonus she desired or to which Plaintiff believed she was entitled, and considering the public policy of encouraging discretionary, gratuitous bonuses, the Court FINDS that Plaintiff's performance evaluation was not an adverse employment action.

### c.  Remaining Factors

Based on the record before the Court at this stage in the proceedings, the Court cannot say, as a matter of law, that Plaintiff would be unable to make out her prima facie case for causation or that Defendant would be able to articulate a legitimate, non-discriminatory reason free from pretext.  Regardless, the burden is on Plaintiff to make out a prima facie case, and her failure to show an adverse employment action is fatal to her claim.

The Court therefore **GRANTS** summary judgment for Defendant on Plaintiff's claims arising out of the May 8, 2002, performance evaluation.[8]

### 2.  Alternate Work Schedule

### a.  Facts

Full time civilian employees are required to work eighty hours every two-week pay

---

[8] It is therefore unnecessary to consider Defendant's Motion to the extent that it moved the Court to dismiss Plaintiff's claims arising out of the May 8, 2002, performance evaluation.

period.  (Doc. 8 ¶ 15.)  Normal duty hours are from 8:00 a.m. to 4:30 p.m., Monday through

Friday, with a half-hour lunch break.  Id., DEX 1 (Rouse Decl. ¶ 7 & Attachment D).  Civilian

employees may be able to work one of several alternate work schedules ("AWSs"), each of

which amounts to a full eighty-hour pay period.  (Doc. 8 ¶ 16.)  One option, "maxiflex," allowed

flexible reporting between 6:00 a.m. and 9:00 a.m., a half-hour lunch between 11 a.m. and 1

p.m., departure between 3:00 p.m. and 6 p.m., and one scheduled day off.  Id.  However, were

mission or work requirements to conflict with the AWS, an employee's ASW could be

terminated or suspended and the employee returned to the normal work day.  Id., DEX 1,

Attachment D, parts 4.6.5. & 4.6.17.

When Col. Rouse arrived, Plaintiff was on the "maxiflex" AWS.  (Doc. 10 p.16.)  Col.

Rouse suspended AWS - in any form - for each of her branch chiefs, including Ms. Jessup, and

the acting branch chiefs, which at the time included Plaintiff.  Id.  Ms. Jessup convinced Col.

Rouse to allow Plaintiff to use a "compressed" AWS schedule instead.  Id.  "Compressed" AWS

allows the employee to work nine of every ten-days in a pay period, as did  "maxiflex," but with

set arrival and departure times.  (Doc. 8 ¶ 19.)  Plaintiff was subsequently denied permission to

return to "maxiflex" AWS.  (Doc. 10 ¶ 19.)

### b.  Adverse Employment Action

The Court hereby FINDS that limiting, or ending, Plaintiff's privilege to participate in the

"maxiflex" alternative work schedule ("AWS") was not an adverse employment action.  Plaintiff

bears the burden of persuading the Court that her removal, and exclusion from, "maxiflex" AWS

("AWS") was an adverse employment action.  To do so, Plaintiff must show that the alleged

consequence - Plaintiff having to use more of her sick leave than she otherwise would have and

having to participate in a regular work schedule - is a "significant detrimental effect" on the terms, conditions, or benefits of her employment.  Von Gunten at 865; Boone at 255-56.

Participating in an AWS may impact Plaintiff's convenience, but it does not change the terms, conditions, or benefits of employment in any significant way.  To find that an employee has been denied a benefit of employment, Plaintiff would have to show that she has been subjected to a significant modification in work schedule.  See Hill v. Michelin North America, Inc., 252 F.3d 307, 312 (4th Cir. 2001).[9]  AWS does not alter the total number of hours required of the employee, the employee's salary, nor the employee's position or responsibilities.  (Doc. 8 p.12, DEX 1 (Rouse Decl. ¶ 7 & Attachment D.)  Denial of AWS does not, for example, alter an employee's shift rotation or require an employee to work more hours.  Compare Hill at 312 (alteration of employee's schedule was significant where employee was required to work twelve-hour shifts instead of eight-hour shifts and where employee's new schedule required him to work during shift rotations).

As the costs of accommodating an AWS may increase as a particular employee's responsibilities increase, or if a particular employee abuses her AWS privileges, employee participation in an AWS is at the discretion of the Air Force.   (Doc. 8, DEX 1, Attachment D ¶¶ 4.6.5 & 4.6.17.)  Therefore, similar policy concerns as those articulated above regarding discretionary bonuses support the Court's holding that the denial of "maxiflex" AWS is not an adverse employment action.  Many employees, and their families, benefit by participating in

---

[9] Although Hill involves the interpretation of the term "benefit of employment" under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C.A. §§ 4301-4333 ("USERRA"), reference to USERRA does not prejudice Plaintiff, as USERRA "must be broadly construed in favor of its . . . beneficiaries."  Hill at 312-13.

AWS.  The Court is unwilling to discourage the provision of such flexible work schedules.
Allowing an employee to lock-in a particular flexible schedule by engaging in protected activity
would, again, elevate a discretionary privilege to a condition of employment.

### c.  Remaining Factors

Based on the record before the Court at this stage in the proceedings, the Court cannot
say, as a matter of law, that Plaintiff would be unable to make out her prima facie case for
causation or that Defendant would be able to articulate a legitimate, non-discriminatory reason
free from pretext.  Regardless, the burden is on Plaintiff to make out a prima facie case, and her
failure to show an adverse employment action is fatal to this claim as well.

The Court therefore **GRANTS** summary judgment for Defendant on Plaintiff's claims
arising out of removing Plaintiff from "maxiflex" AWS and denying her return to the program.

### 3.  Remaining Claims

Plaintiff added several allegedly adverse employment actions in her reply brief to
Defendant's Motion.  Some actions were not alleged in her complaint and others were part of
plaintiff's discarded hostile work environment claim.  Plaintiff alleged that Jessup denied
Plaintiff access to donated sick leave, (Doc. 10 ¶ 27-29) (not alleged in complaint), that Jessup
and others removed Plaintiff from acting as branch chief in Jessup's absence, id. at ¶¶ 30-31 (part
of Plaintiff's hostile work environment claim, (Doc. 1 ¶ 19)), and that Jessup denied Plaintiff
compensatory time for Plaintiff's temporary duty assignments, (Doc. 10 p.27) (not alleged in
complaint).

To the extent that Plaintiff failed to raise these arguments before the EEOC, Plaintiff has
failed to exhaust her administrative remedies and these arguments are not properly before the

16

Court.  While it does not appear from the record that these claims were expressly brought before

the EEOC, (Doc. 8, DEX 10), they may arguably have been considered under "[m]anagement's

support of co-worker's efforts to undermine, alienate, and harass plaintiff, id.  Even so, for the

following reasons Plaintiff fails to establish a prima facie claim of Title VII retaliation with

regards to each claim.

### a.  Donated Sick Leave and Plaintiff's "Removal" as Acting Branch Chief

Even assuming, without deciding, that the denial of sick leave donated to Plaintiff and the

termination of Plaintiff serving as acting branch chief during the branch chief's absence were

adverse employment actions, Plaintiff fails to make a prima facie showing of causation with

regards to each claim.

### i.  Donated Sick Leave

Plaintiff states that the donated sick leave was denied her because "Ms. Jessup blocked

[Plaintiff's] receipt of this benefit first by refusing to forward necessary paperwork . . . and then

by failing to correct paperwork in error."  (Doc. 10 ¶¶ 27-28, Parsons Decl. ¶ 19.)  Plaintiff fails

to allege that Jessup blocked the paperwork because of Plaintiff's prior protected activities.

Plaintiff also fails to allege that she is entitled to an inference of causal connection due to

temporal proximity.

Nor would Plaintiff be entitled to such an inference.  Plaintiff's documentation states that

she received the donated hours on the pay period ending November 30, 2002.  (Doc. 10, PEX 6

p.2.)  On December 28, 2002, Plaintiff forfeited the donated hours and on April 16, 2003,

according to Plaintiff's materials, Jessup was informed at a meeting that Jessup could correct

prior timesheets to allow Plaintiff to access those hours.  Id. at pp.2-3.  November 30, 2002, is

nearly six months from the May 8, 2002, end of Plaintiff's prior protected activity.  Therefore, even if this claim is properly before the Court, the Court FINDS that Plaintiff has failed to make a prima facie showing of a causal connection between her prior protected activities and the her inability to use donated sick leave.

### ii.  Removal as "Acting Branch Chief"

Plaintiff alleges that she was removed from participating as acting branch chief "incredibly" because "Patricia Groce, a very close working associate of Mr. Miskelly, and another [Education Branch] employee went to the union in 2003 demanding that [Plaintiff] be removed as acting branch chief."  (Doc. 10 ¶¶ 30-31, Parsons Decl. ¶¶ 27-28.)  Plaintiff also states that she ably performed the responsibilities of acting branch chief until Jessup "placed Parsons back in a close working relationship with Mr. Miskelly."  Id.  Plaintiff fails to allege that she was removed because of her prior protected activity; rather, Plaintiff appears to blame a hostile work environment for her poor performance.  See id.

Plaintiff is not entitled to an inference of a causal connection.  Regardless of when in 2003 her removal as acting branch chief occurred, for the reasons articulated immediately above with regards to her denial of donated sick leave claim, Plaintiff is not entitled to infer a causal connection through temporal proximity.  Furthermore, she has failed to allege that either Groce, the anonymous second Education Branch member, or the union knew of her 2001-2002 protected activity (although the Court will assume that they knew of the 1996-1998 activity).  The Court therefore FINDS that Plaintiff has failed to make a prima facie showing of a causal connection between her prior protected activities and the removal of Plaintiff as acting branch chief.

18

**b. Denial of Compensatory Time for Temporary Duty Assignments**

Plaintiff fails to show that Jessup's denial of her request for compensatory time for temporary duty assignments was an adverse employment action, because Plaintiff fails to create a genuine issue over whether Plaintiff was entitled to the compensatory time in the first place. Defendant provides a February 14, 2003, e-mail between Jessup and the Chief of the Workforce Effectiveness Branch, indicating that Plaintiff is not entitled to compensatory time for her temporary duty assignments, but that Plaintiff repeatedly requests such time.  (Doc. 11, SUPP. DEX 3).  Plaintiff herself provides a memorandum from Jessup to her dated April 16, 2003, repeating that Plaintiff is not entitled to compensatory time and reminding plaintiff that "[r]eporting compensatory time, after being told that it was not/could not be authorized, is an act of insubordination."  (Doc. 10, PEX 10, ¶ 1.c.)

Plaintiff fails to provide facts as required by Rule 56(e) that would show that she is, in fact, entitled to such compensatory time.  Instead, Plaintiff states that "[her] review of the applicable regulations indicates that [she] was, indeed, entitled to this compensation."  (Doc. 10, Parsons Decl. ¶ 20.)  This self-serving statement, which does not cite to a regulation, is insufficient under Rule 56(e).

Even if Plaintiff did show an entitlement to the compensatory time, she has failed to allege proper causation.  She states that "[e]lements of retaliation like this occurred on a frequent basis and a wide variety of circumstances," (Doc. 10, Parsons Decl. ¶ 20), and that Jessup "forc[ed] [Plaintiff] to perform considerable uncompensated labor," (Doc 10 p.27), but nowhere articulates for what protected activity this compensatory time was denied.  Jessup's memorandum to Plaintiff denying her the compensatory time, dated April 16, 2003, lacks the

temporal proximity to her articulated prior protected activities that would allow her an inference of a causal connection.

The Court therefore **GRANTS** summary judgment for Defendant on Plaintiff's remaining claims.

### III. Conclusion

For the above reasons, Plaintiff's Motion to Defer is **DENIED** and summary judgment is hereby **GRANTED** for Defendant as to all of Plaintiff's claims.  Final judgment is hereby entered on behalf of Defendant.

The Clerk is **REQUESTED** to mail a copy of this Opinion & Order to all counsel of record.

It is so Ordered.

 

 

 

                                                /s/

                                    HENRY COKE MORGAN, JR.
                                  UNITED STATES SENIOR DISTRICT JUDGE

Norfolk, Virginia
June 1, 2006

20